## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS – FORT WORTH DIVISION

| | | |
|---|---|---|
| **MICHAEL CODY TORRES,** | § | |
|    *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF FORT WORTH, CLAUDIA ALFARO,** | § | **Case No. 4:23-cv-60** |
| **JOHNNY HOLLAND, STEVE CARPENTER,** | § | |
| **ELIZABETH BECK,** | § | |
|    *Defendants*. | § | |
| | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

COMES NOW, Plaintiff Michael Cody Torres ("Plaintiff") to seek relief regarding an unconstitutional sound ordinance created by the City of Fort Worth and enforced by peace officers and a city council member acting under the color of law while violating Plaintiff's free speech rights by prohibiting the use of amplification in a public forum twice in June of 2022; the last event including Plaintiff's arrest.

As described herein, the defendants deprived Plaintiff of rights secured by the United States and Texas Constitutions. Plaintiff seeks to invalidate or at least enjoin the subject sound ordinance, and money damages from the defendants for their infringement of Plaintiff's rights, privileges and immunities as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and Article I § 6, 8, 27 of the Texas Constitution, as enforced under 42 USC § 1983.

## I.  PARTIES

1.      Plaintiff Michael Cody Torres ("Torres") is a street evangelist for Proclaiming Christ Ministries under the auspices of the World Baptist Church and is a resident of Paradise, Texas. He may be served through his counsel of record, the undersigned.

2.      Defendant City of Fort Worth ("City") is a home-rule municipal corporation existing under the Constitution and laws of the State of Texas and the Charter of the City of Fort Worth, located in Tarrant County, Texas.

3.      Defendants Claudia Alfaro, Johnny Holland, and Steve Carpenter are Fort Worth police officers and may be served at 200 Texas Street, Fort Worth, TX 76102. They are being sued in their individual capacity.

4.      Defendant Elizabeth Beck is a member of the Fort Worth City Council representing District 9 and may be served at 200 Texas Street, FW, TX 76102. She is sued in her individual capacity.

## II.  JURISDICTION AND VENUE

5.      This is a civil rights action arising from Defendant City of Fort Worth's unconstitutional prohibition on Plaintiff's use of amplification at a public park in Fort Worth without first obtaining a permit from the City of Fort Worth, followed by Defendant Officers Alfaro, Holland, and Carpenter's citation and arrest of Plaintiff - a violation of Plaintiff's right to freedom of speech, press, assembly, association, and conscience.

6.      This action is brought pursuant to 42 USC § 1983, and the First and Fourteenth Amendments to the United States Constitution.

7.      Jurisdiction is founded upon 28 USC § 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

8.      Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 USC § 1367 to hear and decide claims arising under state law.

9.      The Court has personal jurisdiction over the Defendants because they have performed actions about which Plaintiffs complain within this District.

10.     Venue of this suit is proper in this Court under 28 U.S.C. § 1391(b) because substantial events giving rise to the claims occurred within it.

## III.   LEGAL BACKGROUND – FORT WORTH NOISE ORDINANCE

11.     This dispute concerns the Fort Worth Municipal Code of Ordinances Chapter 23 Sec. 23-8, which regulates noise disturbances ("Noise Ordinance"). The Noise Ordinance is attached as Exhibit A-1, and states in part (with underlining added):

> (d) *Noise prohibited.*
> (1) In addition to the other noise restrictions in this section, no person shall make, cause, suffer, allow or permit unreasonable noise in such a manner, or with such volume, intensity or duration, so as to disturb a reasonable person of ordinary sensibilities. A decibel level shall not be required for the enforcement of this subsection (d).
> (2) This subsection (d) is intended to apply to, but is not limited to, unreasonable noises in the form of the following.
> a.  1. *Amplifiers in public ROW and on city property.* The use of a bullhorn, loudspeaker or other amplification is prohibited in the public right-of-way and on City of Fort Worth property, unless permitted as an exception below.
>         2. *Exceptions.*
>             i. Public safety official while performing their duties;
>             ii. Persons with an outdoor event permit as described in § 20405 of the city code; and
>             iii. Persons with permission from pertinent city department director or designee.

12.     Section 20-405 prohibits events at parks without a permit, stating:

(a)  It shall be unlawful for any person to hold, sponsor or cause to be held an event without first having obtained the applicable permit from the public events department or park and recreation department. All events in public parks shall be subject to Division 6 of this article.

(b)  This section shall apply to all aspects of permitting events in the city.

(1)  No permit shall be denied nor shall the applicant be given less favorable treatment as to time, manner or place based upon race, color, creed, religion, gender, domestic relationship status, parental status, sexual orientation, transgender, gender identity or gender expression, national origin or political affiliation of the applicant and/or the participants of the event.

(2)  No permit shall be denied nor shall the applicant be given less favorable treatment as to time, manner or place based upon the message of the event, nor based on the identity or associational relationships of the applicant and/or participants.

(3)  No permit shall be denied nor shall the applicant be given less favorable treatment as to time, manner or place based upon any assumption or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the event, provided that reasonable accommodation as to time, manner and place may be required in order for the city to provide the resources necessary for police, fire and emergency services protection.

(c)  No permit shall be issued until a completed application, together with any additional information requested, is received by the outdoor events manager. The application must be in compliance with the regulations and requirements of this article.

(d)  The closure of any rights-of-way shall require a street closure permit from the transportation and public works department.

## IV.   FACTS

## A. Summary

13.     In June 2022, Plaintiff attended a number of events to engage in constitutionally protected free speech and was cited at two of them for using voice amplification without a permit. Plaintiff made the officers involved aware of previous City communications which admitted that the ordinance involved was unconstitutional. At both events, Plaintiff was directed to limit his activities to a specific area by police to use sound amplification technology. One of the citations led to his arrest and the confiscation of his property.

**B. Background**

14.    Plaintiff is one of the founders of Proclaiming Christ Ministries which operates under the authority of the World Baptist Church and seeks to educate the public about Christianity.

15.    Plaintiff's organization operates a number of ministries and his actions on behalf of the organization include preaching and speaking with others in public locations while often holding signs and banners, exhibiting video footage, utilizing amplification to communicate his message, and offering leaflets with information concerning Christianity.

16.    Plaintiff exercises his speech and association rights with regard to matters of great public concern locally, nationally, and internationally including matters pertaining to sincerely held religious beliefs, religious freedom, and Christianity.

17.    Plaintiff has consistently and regularly preached in the public areas of the Fort Worth Stockyards over the last two years on weekend nights, during public events, and concurrent with various other public demonstrations.

18.    Prior to the events described here, Plaintiff researched Fort Worth Sound Ordinances and discovered Fort Worth Municipal Code of Ordinances Chapter 23 Sec. 23-8 (attached as Exhibit A-1), which regulates loud unnecessary and unusual noise, and noise disturbances ("Noise Ordinance").

19.    Sec. 23-8(d)(2)a1 of the Noise Ordinance prohibits "use of a bullhorn, loudspeaker or other amplification…in the public right-of-way and on City of Fort Worth property, unless permitted as an exception."

20.    Plaintiff has spoken publicly with amplification in Fort Worth many times; the City has not required a permit as described under § 20-405 to use amplification in public places when reasonably exercising his right to speak freely about his faith.

21.    In addition, Plaintiff came to believe that the Sound Ordinance was unconstitutional, in part because he became aware of a previous written exchange of letters between street preacher Terry Fish and City Attorney Sarah Fullenwider that began on November 27, 2017, when Fish sent a letter to Police Chief Fitzgerald and City Attorney Sarah Fullenwider expressing concerns about the constitutionality of the Noise Ordinance, particularly as it related to amplification. On February 21, 2018, Laetitia Coleman Brown, senior assistant City Attorney and Chief of the Public Safety section replied to Fish's attorneys ensuring them that the City would not be enforcing the noise amplification provision of the Sound Ordinance and the City planned to amend the Sound Ordinance to remove the ban on amplification ("Letter"). The Letter is attached as Exhibit A-2.

22.    Though the Letter came with a proposed amendment to the Noise Ordinance which appeared to be poised for passage in 2018, as of the time of this Complaint, the Defendant City's Noise Ordinance has yet to be amended.

## C. June 18, 2022 Event

23.    At the first event leading to a citation on June 18, 2022, Plaintiff was present at an event held at a public city park. Plaintiff was not impeding the activities taking place, but was using amplification to communicate his message to those in attendance in the area designated by police. Fort Worth Police initially permitted Plaintiff to use his amplification, but Defendant Officer Alfaro ultimately reversed course and began to threaten Plaintiff with citation and arrest unless he discontinued use of sound amplification.

24.    Plaintiff presented the city-issued Letter to Defendant Officer Alfaro as clarification that the Noise Ordinance regarding amplification was not to be enforced, but Alfaro refused to concede even when shown that the Letter was signed by the City Attorney.

25.    Defendant Officer Alfaro gave citation GA064077 to Plaintiff for a violation of code 23-8, listing "unreasonable noise amplifier" on the description of violations.

26.    Upon information and belief, the Fort Worth Police Department threatened Plaintiff for his speech at the direction and instruction of Fort Worth City Council member Elizabeth Beck, who was present at the event for at least some time, and is thought to have given direction to Alfaro.

**D. June 25, 2022**

27.    At the second event leading to Plaintiff's arrest on June 25, 2022, Plaintiff was confronted by Defendant Officers Holland and Carpenter. Defendant Officer Holland informed Plaintiff that he could not use the sound amplifier because the "Pride" event at which Plaintiff was speaking was not a political gathering. Though Defendant Officer Holland should have known that the distinction was irrelevant, Plaintiff told the officer that he used sound amplification at the Fort Worth Stockyards regularly without a permit.

28.    Defendant Officer Holland inquired what decibel Plaintiff would be using, again asking the question as though it was relevant or might inform the officer's actions, Plaintiff replied that he had no way of knowing that information. Plaintiff asked if the officer had a decibel reader and learned that he did not, revealing that the question was irrelevant in any case.

29.    In order for his message to be heard, given the distance and sound level of the gathering, Plaintiff had to use reasonable sound amplification.

30.    Defendant Officers Carpenter and Holland then left, but shortly after Plaintiff began to preach, a directed response unit swept in and without question or hesitation seized Plaintiff and his property, arrested him, and took him to jail. A recording of that activity is documented as Exhibit A-3, and is available upon request.

31.     Defendant Officers Carpenter and Holland gave citation GA064077 to Plaintiff for a violation of code 23-8, listing "unreasonable noise" on the description.

**E. Additional Facts and Damages to Plaintiff**

32.     At all material times, Plaintiff was peacefully exercising his constitutionally-protected First Amendment rights to free speech, free press, free association, conscience, and beliefs on matters of public concern in a traditional public forum.

33.     At all material times, Plaintiff acted lawfully, without interference, never threatened any person, and never resisted any lawful order by any police officer.

34.     Defendants' speech-related conduct, practices, policies and customs, and Defendants' arrest of Plaintiff had a chilling effect on Plaintiff's free speech, press, expression, and association rights, and further constitute content-based regulation of Plaintiff's speech, and prior restraint on protected expression and associations.

35.     Defendants' actions, policies, and practices that constrain Plaintiff's ability to exercise his First Amendment rights are overbroad, not narrowly tailored to accomplish any compelling interest of Defendants.

36.     Defendants' conduct was objectively unreasonable under the circumstances.

37.     All Defendants, their employees, and agents, engaged in a concert of action and joint venture to deny Plaintiff his rights to freedom of speech, press, association, conscience, and beliefs through threats, intimidation, and coercion without

Plaintiff's consent and in furtherance of a common scheme to violate Plaintiff's aforementioned rights, with knowledge of the conspiracy and its unlawful purpose.

38.  Defendants' conduct described herein was intended, and was reasonably likely, to deter and chill Plaintiff's exercise of clearly-established constitutionally-protected rights and was in retaliation for Plaintiff's political views and his exercise of constitutionally-protected rights.

39.  Defendants' conduct described herein had a chilling effect on Plaintiff's exercise of his First Amendment rights.

40.  At all material times, Defendants' restrictions on Plaintiff's protected First Amendment activity were unreasonable as to time, place, and manner.

41.  Plaintiff's exercise of his First Amendment rights to freedom of speech, press, assembly, association, conscience, and beliefs, and the content and viewpoint of Plaintiff's protected expression, or perceived expression, was a substantial or motivating factor for Defendants' conduct.

42.  At all material times, the actions and omissions of each Defendant were intentional, wanton, willful, conscience shocking, reckless, malicious, deliberately indifferent to Plaintiff's rights, done with actual malice, grossly negligent, and objectively unreasonable.

43.  Each officer defendant was given the opportunity to ensure he was acting within the boundaries of the United States Constitution. Plaintiff even tried to show

these individuals the Letter, written by the City's own attorney, which should have been sufficient to inform them that they should act with more caution.

44.  The Defendant City of Fort Worth has currently sought to prosecute Plaintiff for his actions by both citing and jailing him.

45.  Defendant City of Fort Worth and its officers have a policy and practice of violating the constitutional rights of speakers using amplification in traditional public fora within its boundaries.

    a.  In 2017, the city and its officers threatened street preacher Terry Fish with citation and arrest for using amplification to communicate his protected religious message.

    b.  In 2019, the city and its officers threatened and cited street preacher Ryan Roberts for using amplification to communicate his protected message based on his sincerely-held religious beliefs.

    c.  Defendants acknowledged the problematic nature of its ordinance in a letter, but have yet to amend it, but continue to enforce it against persons exercising their First Amendment rights to speech and religion. (See Exhibit A-2.)

46.     As a direct and proximate result of Defendants' conduct, Plaintiff sustained the following further injuries and damages:

    a.  Mental suffering and emotional distress;

    b.  Interference with and irreparable damage to his constitutional rights;

    c.  All damages recoverable under 42 USC § 1983-88 and associated laws;

    d.  Suppression of speech and interference with beliefs and associations.

47.     With regard to all the causes that follow against Defendants, Plaintiff alleges that Defendants developed and maintained polices or customs exhibiting deliberate indifference to the constitutional rights of persons using amplification at demonstrations in Fort Worth, which violated Plaintiff's rights, and which were further supported by the deliberate instruction of Defendant City Council Member Elizabeth Beck as to the unconstitutional enforcement of the Noise Ordinance.

48.     The policies and customs demonstrate a deliberate indifference, at the least, by the policymakers at Defendant City of Fort Worth to protecting the constitutional rights of people using amplification while demonstrating in Fort Worth, and those policies and customs were the cause of the violations of Plaintiff's rights.

49.     The undersigned sent a demand letter on November 14, 2022, seeking to resolve this matter; the City has failed to respond as of the filing of suit. (Exh. A-4.)

# V.    CAUSES OF ACTION

## A. Claim 1 – 42 USC § 1983 Violation of First Amendment and Fourteenth Amendment against all Defendants as-applied to Plaintiff

50.    Plaintiff's religious expression, in the form of amplified speech, constitutes protected speech under the Free Speech Clause of the First Amendment to the United States Constitution.

51.    Under 42 U.S.C. §1983, "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

52.    Defendants City of Fort Worth and Officers Alfaro, Holland, and Carpenter, in their individual capacity, acted under color of law when they threatened and then enforced Fort Worth Municipal Code of Ordinances Chapter 23 § 23-8(d)(2) and confiscated Plaintiff's equipment, including his amplification equipment while he was demonstrating in a public forum, depriving Plaintiff of the clearly-established and well-settled constitutional rights protected by the First and Fourteenth Amendments to the U.S. Constitution, specifically:

   a. The right to be free from interference with, or retaliation for, exercise of constitutionally protected rights, including speech, association, conscience, and beliefs, as secured by the First and Fourteenth Amendments;

   b. The right to be free from the deprivation of equal protection of the law as secured by the Fourteenth Amendment.

53.    Fort Worth's laws, policies and practices, including its application of Fort Worth's Sound Ordinance without a permit in traditional public fora, and the enforcement thereof:

    a.  are vague and overbroad;

    b.  discriminate against speech because of its content and viewpoint;

    c.  restrain constitutionally-protected speech in advance of its expression, without appropriate guidelines or standards to guide the discretion of officials charged with enforcing the policy;

    d.  chill the free speech of Torres and other third-party citizens;

    e.  allow for the exercise of unbridled discretion; and

    f.  lack narrow tailoring, fail to achieve any legitimate government purpose, and fail to leave open ample alternative avenues for expression.

54.    Defendants City of Fort Worth and its officers have no compelling or legitimate reason that can justify their restriction on Torres's amplified speech.

55.    Aside from the two instances herein described, Defendant City of Fort Worth has an established practice of violating clearly established First Amendment rights of speakers using amplification in the city.

    a.      In 2017, the city's officers threatened street preacher Terry Fish with citation and arrest for using amplifying his protected religious message.

b.     In 2019, the city and its officers threatened and cited street preacher Ryan Roberts for using amplification to communicate his protected message based on his sincerely-held religious beliefs.

56.     Defendants acknowledged the problematic nature of its ordinance, but have yet to amend it, but continue to enforce it against persons exercising their First Amendment rights to speech and religion. (See Exhibit A-2)

57.     Defendant City of Fort Worth has failed to properly train its officers with regard to their duties to protect and not violate the constitutional rights of those exercising them within the city's boundaries.

58.     When presented on multiple occasions in the last few years with the scenario of citizens using amplification to project their protected speech in a traditional public forum, and even presented with a letter from the city's attorney alerting the officers that the ordinance they were claiming to enforce needed amendment, the officers continued with their enforcement and arrest without regard to the rights clearly imperiled by their behavior.

59.     These actions demonstrate a lack of training by the city of its officers to understand the scope of First Amendment protections.

60.     Given that the city has been faced with this situation multiple times in recent years and its officers continue to violate citizens' rights, the municipality is clearly

deliberately indifferent to the training problems and the lack of training has caused the violation of Plaintiff's and other citizens' First Amendment rights to speech.

61.     Orally broadcasting these views is a protected method for disseminating them. *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981); *see Edwards*, 372 U.S. at 236 ("religious harangue" protected). And because the right to free speech means a right to be heard, the Constitution guarantees the right to use amplification in public. *Saia v. New York*, 334 U.S. 558, 560-61 (1948); *Reeves v. McConn*, 631 F.2d 377 (5th Cir. 1980) ("The right to communicate inherently comprehends the right to communicate effectively"). Plaintiff's expression undeniably warrants full constitutional safeguarding.

62.     The United States Supreme Court has recognized that, "parks...have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public issues. Such use has, from ancient times, been part of the privileges, immunities, and liberties of citizens." *Hague v. Committee for Industrial Organization*, 307 U.S. 496, (1939). *Hill v. Colorado*, 530 U.S. 703, 715 (2000); *Pleasant Grove City v. Summum*, 555 U.S. 460, 129 S. Ct. 1125 (2009); *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 746 (5th Cir. 2009).

63.    The Supreme Court forbade a government from requiring permits for use of loudspeakers in public places with similar restrictions since at least 1948. *Saia v. New York,* 334 U.S. 558 (1948).

64.    The Supreme Court has also held that in "quintessential public forums, the government may not prohibit all communicative activity" and that content-based restrictions on speech are highly suspect. *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983).

65.    Plaintiff was not disturbing the peace or quiet of any neighborhood or causing discomfort or annoyance to any reasonable person of normal sensitivity residing in the area or creating a noise disturbance. He was exercising his constitutional right to free speech, which includes the right to be heard.

66.    In the facts at bar, Defendant City of Fort Worth and its officers violated Plaintiff's rights by enforcing a sound ordinance against Plaintiff in a public park to quell constitutionally-protected speech because its content is offensive to some.

67.    Defendants' laws, policies and practices, and the enforcement thereof, thus violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment to the United States Constitution.

68.    To stop the unconstitutional actions, Plaintiff asks the Court grant the equitable and legal relief set forth in the prayer for relief.

**B. Claim 2 – The Fort Worth Sound Ordinance Violates the First Amendment and Fourteenth Amendment on its face, is invalid and void.**

69.     As the text of § 20-405 shows, the permit process gives no standard by which a person could predict that a permit might be granted or denied.

70.     A direct restriction on speech, § 23-8(d)(2) can only be upheld if it 1) is content-neutral, 2) is narrowly tailored to serve a significant government interest, and 3) leaves open ample alternative channels of communication. *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45 (1983); *accord Knowles v. City of Waco*, 462 F.3d 430, 434 (5th Cir. 2006). As a total ban of amplification in public throughout the city, § 23-8(d)(2) fails this test.

71.     Fort Worth ordinance § 23-8(d)(2) is not narrowly tailored to a significant interest because it "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989). Whatever interest Fort Worth may have in regulating excessive volume, *see Ward*, 491 U.S. at 796, it has no valid interest in a total ban on amplification. *Saia*, 334 U.S. at 562 ("The police need not be given the power to deny a man the use of his radio in order to protect a neighbor against sleepless nights."); *Reeves*, 631 F.2d at 385 ("An absolute and city-wide prohibition of all sound amplification except during nine hours of the day cannot be viewed as narrowly tailored to further the State's legitimate interest.") (citation and quotation marks omitted).

72.    In *Reeves*, the Fifth Circuit held that a Houston ordinance that banned amplification in most public places for most hours of the day was not narrowly tailored:

> Not every amplified sound at every time except Sunday afternoon will disrupt the normal business activity of the downtown district or make the streets unsafe. Precisely because the downtown district is already a busy and noisy place, reasonably amplified free speech is guaranteed a broad right to equal participation in these aspects of modern urban life…[T]here is probably no more appropriate place for reasonably amplified free speech than the streets and sidewalks of a downtown business district.

*Id.* at 384.

73.    Fort Worth ordinance § 23-8(d)(2) is even broader than the restriction invalidated in *Reeves*, banning amplification at any volume on all city property at all times. This plainly lacks any degree of tailoring. Like the City of Houston, Fort Worth "may not broadly prohibit reasonably amplified speech merely because of an undifferentiated fear that disruption might sometimes result." *Id.* at 388.

74.    In addition to lacking tailoring, § 23-8(d)(2) fails to leave open ample alternative avenues for Plaintiff, further condemning it. The First Amendment guarantees the right of speakers to have ample opportunity to reach their intended audience and win their attention. *Heffron*, 452 U.S. at 655; *see Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 866 (9th Cir. 2001) (ordinance that fails to allow speaker to reach audience fails to leave ample alternatives). That Plaintiff may try in vain to be heard over ambient noise does not provide *ample* alternatives. *See Reeves*,

631 F.2d at 382 ("The mere existence of an alternative means of expression – in this case, unamplified speech – cannot by itself justify a restraint on some particular means that the speaker finds more effective").

75.     Fort Worth Municipal Code of Ordinances Chapter 20 § 20-405 is unconstitutionally vague as it fails to provide any time frame for applying for a permit nor does it even stipulate a timeframe under which the City must review and grant or deny a permit, or articulate any meaningful guidelines regarding what an applicant must do or avoid in order to receive the permit, or under what conditions amplification is even required to be permitted. Plaintiff had preached using amplification in public fora many times in Fort Worth without receiving the treatment he experienced here.

76.     Without a timeframe for submitting an application for a permit or a timeframe by which permits must be granted or denied, this code is vague and incomprehensible and allows for arbitrary responses or non-responses.

77.     The lack of submission timeframe also makes it clear that the code places a prior restraint on spontaneous speech.

78.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff sustained injuries as described supra.

79.     Plaintiff asks the Court to declare the Sound Ordinance unconstitutional, invalid, and void with regard to the permitting of amplified speech.

## C. Claim 3 – Violation of Texas Constitution Article I § 8 Liberty of Speech against all Defendants

80.     Defendants City of Fort Worth, City Councilmember Elizabeth Beck, and Officers Alfaro, Holland, and Carpenter, acted under color of law when they threatened to enforce and subsequently arrested Plaintiff for use of his amplification in a public forum thereby depriving Plaintiff of the clearly-established and well-settled constitutional rights protected by Article 1, § 8 of the Texas Constitution. "Every person shall be at liberty to speak, write or publish his opinions on any subject . . ." Tex. Const. Art. I, § 8.

81.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered the deprivation of his rights guaranteed by the Texas Constitution and seeks declaratory and equitable relief for such deprivations.

## D. Claim 4 – Beck's *Ultra Vires* direction to violate Plaintiff's free speech

82.     Under the ultra vires doctrine, sovereign immunity does not prohibit suits against a state official or officer of a state entity if the official's actions were ultra vires. *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). *Heinrich* held that declaratory judgment claims alleging ultra vires actions are not barred by governmental immunity, reasoning that ultra vires claims do not seek to control the government, but rather to reclaim control from an official allegedly acting in violation of the law. The Texas Supreme Court noted that "[t]o fall within this ultra vires exception, a suit must not complain of a government officer's exercise of

discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.*, at 372.

83.     The Texas Supreme Court has held that an official acts without legal authority when, "a government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus act ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).

84.     The basic justification for this *ultra vires* exception to sovereign immunity is that ultra vires acts—or those acts without authority—should not be considered acts of the state at all. *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945). Consequently, "*ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state" over one of its agents. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) (citing *Heinrich*, 284 S.W.3d at 372).

85.     In *Heinrich* the Texas Supreme Court clarified that governmental entities themselves are not proper parties to an *ultra vires* suit, but instead, a plaintiff must sue the relevant officers in their official capacities. *Heinrich*, 284 S.W.3d at 372–73.

86.     An *ultra vires* claim based on actions taken "without legal authority" has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act; and (2) conduct outside of that authority. *Hous. Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).

87.   On June 18, 2022, City Councilmember Elizabeth Beck directed FWPD Officers to unconstitutionally infringe on Plaintiff's First Amendment rights relying on her authority as a government agent, but acting outside the legitimate ambit of her authority as a City Councilmember and ultimately causing Plaintiff's damages.

**E. Claim 5 --42 USC § 1983 Conspiracy by Defendants to Violate the First Amendment and Fourteenth Amendment, and Texas Constitution Art. I § 8**

88.   Defendant City councilmember Elizabeth Beck's communication to Officers Alfaro, Holland, and Carpenter, was an express agreement between the City officials to enforce Fort Worth Municipal Code of Ordinances Chapter 23 **§** 23-8(d)(2)a1 against Plaintiff for exercising his free speech based on the content of his speech.

89.   Defendants City of Fort Worth, City Councilmember Elizabeth Beck, and Officers Alfaro, Holland, and Carpenter acted under color of law when they threatened to enforce Fort Worth Municipal Code of Ordinances Chapter 23 § 23-8(d)(2)a1 and thereby deprive Plaintiff of his rights under the United States and Texas Constitutions, and are therefore liable to Plaintiff under 42 USC § 1983.

90.   Defendants City of Fort Worth, City Councilmember Elizabeth Beck, and Officers Alfaro, Holland, and Carpenter participated in assisting one another in executing the pre-textual sound permit policy at issue in this ligation to act to threaten and arrest Plaintiff, which resulted in the deprivation of his Federal and State Constitutional rights leading to Plaintiff's damages.

## F. Claim 7 - Attorney Fees

91.     Plaintiff seeks reasonable attorney fees, which the Court may award at its discretion. 42 U.S.C. § 1988; *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

## VI.   CONDITIONS PRECEDENT

92.     All conditions precedent have been met.

## VII.   JURY TRIAL

93.     Plaintiff requests trial of all claims by jury.

## VIII.  PRAYER

Plaintiff prays that the Court grant Plaintiffs:

    a. A court order for declaratory and injunctive relief declaring that Chapter 23 § 23-8(d)(2)a1 is unconstitutional on its face and as applied to Plaintiff;

    b. Award compensatory, general, and special damages against all Defendants;

    c. Costs of court and attorney's fees;

    d. All other relief to which Plaintiff may be entitled in law and equity.

Respectfully submitted,

By: */s/ Warren V. Norred*
Warren V. Norred, Texas Bar No. 24045094, warren@norredlaw.com
515 E. Border; Arlington, Texas 76010
P: 817-704-3984; F: 817-524-6686
Attorney for Plaintiff

**Exhibits Attached:**
Exhibit A Declaration of Michael Cody Torres.
Exhibit A-1 FW Ordinance Sec. 23-8(d)(2)
Exhibit A-2 Letter from City Attorney
Exhibit A-3 Video Recording June 25 (available on request)
Exhibit A-4 Demand Letter to City of Fort Worth

**Declaration**

"My name is Michael Cody Torres, my date of birth is November 12, 1994 and my address is 146 Private Road 3587, Paradise, Texas 76073, US. I declare under penalty of perjury under the laws of the United States of America that the following is true and correct."

1.      I am one of the founders of Proclaiming Christ Ministries which operates under the authority of By The World Baptist Church and seeks to educate the public about Christianity.

2.      Proclaiming Christ Ministries operates a number of different types of ministries including preaching in a variety of public locations. My speech and activities include holding signs and banners, exhibiting video footage, utilizing loud speakers to communicate the message of the cross and offering gospel tracts that also communicate the death, burial and resurrection of the Lord Jesus Christ. We seek to proclaim the gospel of Jesus Christ dying in the place of sinners and justifying the ungodly because it is the means by which God saves sinners.

3.      My speech at both events where I was cited and then arrested was on matters of great public concern locally, nationally, and internationally, including matters pertaining to my sincerely held religious beliefs and Christianity.

4.      One area where Proclaiming Christ Ministries evangelists have consistently preached over the last two years has been the Fort Worth Stockyards on Friday or Saturday nights.

5.      I also preach at public events including women's marches and pride events.

6.      In June of 2022, I attended a number of events and was cited at two of them. One of the citations led to my subsequent arrest.

7.      At both events, I was directed where to stand by police and used sound amplification technology.

**June 18, 2022 Event**

8.      At the first event leading to a citation on June 18, 2022, the police initially permitted me to use my amplification equipment, but Officer Claudia Alfaro ultimately reversed course and began to threaten me with citation and arrest unless I discontinued use of sound amplification.

9.      Prior to using sound equipment at the demonstration we had already obtained the Fort Worth Sound Ordinances and discovered Fort Worth Municipal Code of Ordinances Chapter 23 Sec. 23-8(d)(2)(a.)(1), which regulates loud unnecessary and unusual noise, and noise disturbances. Attached as Exhibit A-1 Sec. 23-8(d)(2)(a.)(1)

10.      On November 27, 2017, another group of Christians who also preach at events and public gatherings gave us a copy of the response they received after sending a letter to former Police Chief Fitzgerald and former City Attorney Sarah Fullenwider expressing concern about the city's Noise Ordinance relating to megaphones.

11.      On February 21, 2018, Laetitia Coleman Brown, senior assistant City Attorney and Chief of the Public Safety section sent a letter to those unnamed Christians assuring them that the City would not be enforcing the noise amplification provision of the Noise Ordinance and that the City was working to amend the ordinance. Attached as Exhibit A-2 Letter from City Attorney.

12.      Sec. 23-8(d)(2)(a.)(1) prohibits "use of a bullhorn, loudspeaker or other amplification…in the public right-of-way and on City of Fort Worth property, unless permitted as an exception" including (2)(ii) Persons with an outdoor event permit as described in Sec 20-405 of the City code". Exhibit A-1

13.      Upon information and belief, the Fort Worth Police Department threatened me at the direction of Fort Worth City Councilor Elizabeth M. Beck.

Declaration of Michael Cody Torres                                                          Page 2

**June 25, 2022**

14.   At the second event leading to my arrest on June 25, 2022, I was confronted by Officer's Johnny Holland and Steve Carpenter. Officer Holland said that I could not use the sound amplifier because the Pride event was not a political issue. I told the officer that we use sound amplification at the stock yards regularly. Holland inquired what decibel I would be using, and I replied that I had no way of knowing that information. I asked if the officer had a decibel reader and learned that he did not. I then said respectfully, "Well, I guess that's for you to figure out." The officers walked away and shortly after I began to preach, a directed response unit swept in and without question or hesitation seized me and my property, arrested me, and took me to jail. Attached as Exhibit A-3 Video Recording June 25.

15.   At all material times, I was peacefully exercising my Constitutionally protected First Amendment rights to free speech, press, association, conscience, and beliefs, on matters of great public concern in a public forum.

16.   At all material times, I acted lawfully, without interference, never threatened any person, and never resisted any lawful order by any police officer.

17.   Defendants' speech-related conduct, practices, policies and customs, and Defendant's arrest of me had a chilling effect on my free speech, press, expression, and associations, and further constitute content-based regulation of my speech, and prior restraints on protected expression and associations.

Executed in Tarrant, Texas on December 1?, 2022.

_____
Michael Cody Torres

Declaration of Michael Cody Torres                                            Page 3

Scanned with CamScanner

Print

Fort Worth, TX Code of Ordinances

## § 23-8 NOISE.

(a) *General provisions.*

(1) *Scope.* This section applies to the control of all sound and noise within the City of Fort Worth.

(2) *Overview.* This section is designed to regulate noise by various alternative means in order to allow the enforcement of noise regulations at times when and by persons for whom noise meters are not available. A noise may be in violation of this section because it is disturbing to a reasonable person of ordinary sensibilities or because it exceeds the decibel level restrictions provided below. If a noise violates more than one of these provisions, the violation will be enforced under whichever provision is most applicable to the situation as determined by the enforcement officer of the city.

(b) *Definitions.*

**A-WEIGHTING (dBA).** The sound pressure level in decibels as measured on a sound level meter using the A-weighted network. The level so read is designated dB(A) or dBA.

**AMBIENT NOISE.** The all-encompassing noise level associated with a given environment, being a composite of sounds from all sources at the location, constituting the normal or existing level of environmental noise at a given location.

**BOUNDING REAL PROPERTY LINE.** An imaginary line at the ground and its vertical extension which separates the real property owned or occupied by one person from that owned or occupied by another person.

**DECIBEL (dBA).** The unit of measurement for sound pressure at a specified location.

**GOVERNMENTAL FUNCTION.** Work conducted by a governmental entity in the interest of the community.

**RESIDENTIAL.** Property zoned for residential use in accordance with the city's zoning ordinance.

**SOUND LEVEL.** The instantaneous sound pressure level measured in decibels obtained by the use of a sound level meter set for A-weighting on slow integration speed, unless otherwise noted.

**UNREASONABLE NOISE.**

a. Any unreasonably loud, disturbing and unnecessary noise which causes material distress, discomfort or injury to persons of ordinary sensibilities in the immediate vicinity thereof; or

b. Any noise of such character, intensity and continued duration, which substantially interferes with the comfortable enjoyment of private homes by persons of ordinary sensibilities.

(c) *Restrictions on decibel levels.*

(1) *Maximum sound levels.* During the times and in the zoning districts (except for activities originating in industrial zoning districts) set out below, the activities that create a sound pressure level on the complainant's bounding real property line that exceeds the maximum allowable sound level (dBA) below are declared to be public nuisances:

a. *All residential (one-, two- and multifamily) zoning districts.*

Case 4:23-cv-00060-O   Document 1   Filed 01/17/23   Page 29 of 53   PageID 29

| Daytime | 7:00 a.m. to 10:00 p.m. = 70 dBA |
|---------|----------------------------------|
| Nighttime | 10:00 p.m. to 7:00 a.m. = 60 dBA |

     b. *All nonresidential and mixed-use zoning districts (excluding industrial zoning districts) outside "H" central business district and "TU" Trinity uptown.*

| Daytime | 7:00 a.m. to 10:00 p.m. = 80 dBA |
|---------|----------------------------------|
| Nighttime | 10:00 p.m. to 7:00 a.m. = 70 dBA |

     c. *"H" central business district, "TU" Trinity uptown and West 7th Village (per attached map).*

| Sunday through Thursday | |
|---------|----------------------------------|
| Daytime | 7:00 a.m. to 10:00 p.m. = 80 dBA |
| Nighttime | 10:00 p.m. to 7:00 a.m. the following day = 70 dBA |
| Friday through Saturday | |
| Daytime | 7:00 a.m. to 2:00 a.m. the following day = 80 dBA |
| Nighttime and Sunday | 2:00 a.m. to 7:00 a.m. = 70 dBA |

     d. All zoning where ambient noise level exceeds the prescribed maximum level:

| 7:00 a.m. to 10:00 p.m. = Existing ambient (dBA) + 3 dBA |
|---------|
| 10:00 p.m. to 7:00 a.m. = Existing ambient (dBA) |

     (2) *Method of noise measurement.* Noise measurements shall be a minimum of 30 seconds in duration. Decibel levels are measured from the complainant's property line. For residential districts adjacent to other districts (excluding industrial zoning districts), the residential decibel levels apply when measured from a residential complainant's property line. Violations will be determined based on the highest registered reading in that measurement period. All measurement levels will be inclusive of any ambient noise that exists at the time of the measurement.

   (d) *Noise prohibited.*

     (1) In addition to the other noise restrictions in this section, no person shall make, cause, suffer, allow or permit unreasonable noise in such a manner, or with such volume, intensity or duration, so as to disturb a reasonable person of ordinary sensibilities. A decibel level shall not be required for the enforcement of this subsection (d).

     (2) This subsection (d) is intended to apply to, but is not limited to, unreasonable noises in the form of the following.

     a. 1. *Amplifiers in public ROW and on city property.* The use of a bullhorn, loudspeaker or other amplification is prohibited in the public right-of-way and on City of Fort Worth property, unless permitted as an exception below.

2. *Exceptions:*

    i.  Public safety official while performing their duties;

    ii.  Persons with an outdoor event permit as described in § 20-405 of the city code; and

    iii.  Persons with permission from pertinent city department director or designee.

  b.  *Animals.* It shall be unlawful to keep, or to permit the keeping of, any dog(s) or rooster(s) or any other bird or animal that creates any bark, cry, crow or other sound on a frequent, repetitive or continuous basis for ten minutes or longer.

  c.  *Construction work.* Noise created by construction work within 300 feet of an occupied residential structure involving the erection, excavation, demolition, alteration or repair of any building, structure or flatwork is prohibited as follows:

| Before 7:00 a.m. or after 8:00 p.m. | Monday—Friday |
|---|---|
| Before 9:00 a.m. or after 8:00 p.m. | Saturday—Sunday |

  d.  *Solid waste collection.* Noise created by solid waste haulers within 300 feet of residential zoning before 6:00 a.m. and after 11:00 p.m. is prohibited, unless a waiver is granted to the waste hauler by the director of code compliance or his or her designee in accordance with the grant of privilege issued by the city to the waste hauler.

  e.  *Music.* The playing of any music or musical instrument in such manner or with such volume or bass, particularly during the nighttime hours described in subsection (c) above restrictions on decibel levels above, as to annoy or disturb the quiet, comfort or repose of persons of ordinary sensibilities in any dwelling, hotel or other type of residence.

  f.  *Horns or other signal devices.* The continued or frequent sounding of any horn, air horn or signal device on any vehicle except as a danger or warning signal; the creation by means of any such signal device of any unreasonably loud or harsh noise for any unnecessary and unreasonable period of time.

  g.  *Operation of motor vehicles.* The revving of any engine, the playing of any music with such volume or bass, or the operation of any vehicle so out of repair, so loaded or in such manner as to create loud or unnecessary grating, grinding, jarring, rattling or squealing noise or vibrations.

  (e)  *Exemptions.* The following acts and sounds shall be exempt from the requirements of this section:

    (1)  Noise generated due to normal building conditioning and ventilation and property maintenance;

    (2)  Noise generated on public and school property, as permitted by the property owner;

    (3)  Noise generated by an outdoor event that is permitted as described in § 20-405 of the city code;

    (4)  Noise generated by amplifiers at entertainment venues having a capacity of 1,000 or more persons within "TU" Trinity Uptown;

    (5)  Noise generated by any governmental body and its contractors in the performance of a governmental function;

    (6)  Noise generated by airport, railway and vehicular transportation;

    (7)  Noise produced by gas drilling and production, which is regulated by the gas drilling ordinance in Chapter 15 of the city code; and

    (8)  Noise generated at Texas Motor Speedway.

Case 4:23-cv-00060-O   Document 1   Filed 01/17/23   Page 31 of 53   Exhibit A-1

(f) *Enforcement.* The provisions of this section shall be enforced primarily by the police department and code compliance department.

(g) *Penalties.*

(1) A person commits an offense if the person makes noise in violation of this section.

(2) An offense under this section is punishable by a fine of not more than $500.

(3) Each occurrence of a violation, or, in the case of multiple violations, each day a violation occurs or continues, constitutes a separate offense and may be punished separately.

(4) A violation of this section is a nuisance. The prosecution of an offense under this section does not limit the city's right to abate the nuisance, including the use of injunctive or other civil relief.

(1964 Code, § 27-18)  (Ord. 8767, § 1, passed 3-29-1983; Ord. 15608, § 1, passed 7-8-2003; Ord. 20191-05-2012, § 1, passed 5-1-2012)

Feb. 21. 2018  8:56AM                                    No. 6752   P. 1/1



# FORT WORTH

LAETITIA BROWN
SENIOR ASSISTANT CITY ATTORNEY

(817) 392-6639
LAETITIA.BROWN@FORTWORTHTEXAS.GOV

February 21, 2018

Nathan W. Kellum
Tony Mangini
Center for Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN  38117

Re: Terry Fish Complaint

Dear Mr. Kellum and Mr. Mangini:

You sent a letter to Police Chief Fitzgerald and City Attorney Sarah Fullenwider on November 27, 2017, expressing your concern with the City's Noise Ordinance. Your specific concern was the City's prohibition against amplification. The City is in the process of working on an amendment to the Noise Ordinance that would remove the ban on amplification. I expect that amendment to go before the full Council sometime in late March or early April. In the meantime, the City will not be enforcing the amplification provision of the Noise Ordinance.

It is also my understanding that Mr. Fish received a citation in August 2017. Mr. Fish agreed to deferred adjudication on that citation. He has completed probation and the citation has been dismissed. Mr. Fish has no other outstanding citations.

I will contact you when the amendment gets on the Council schedule. If you have any questions or wish to discuss further do not hesitate to contact me.

Respectfully,

Laetitia Coleman Brown
Senior Assistant City Attorney
Chief, Public Safety Section

:rhm

**OFFICE OF THE CITY ATTORNEY**
The City of Fort Worth ★ 200 Texas Street ★ Fort Worth, Texas 76102
817-392-7600 ★ Fax 817-392-8359

## ORDINANCE NO. 24752-03-2021

AN ORDINANCE AMENDING SECTION 23.8 "NOISE" OF CHAPTER 23, "OFFENSES AND MISCELLANEOUS PROVISIONS" OF THE CODE OF THE CITY OF FORT WORTH (2015), TO AMEND THE REGULATION OF AMPLIFIERS; PROVIDING THAT THIS ORDINANCE SHALL BE CUMULATIVE OF ALL ORDINANCES; PROVIDING A SAVINGS CLAUSE; PROVIDING A SEVERABLITY CLAUSE; PROVIDING A PENALTY CLAUSE; PROVIDING FOR PUBLICATION AND NAMING AN EFFECTIVE DATE.

**WHEREAS,** it is the policy of the City of Fort Worth to minimize the exposure of citizens to excessive noise and to protect, promote and preserve the public health, comfort, convenience, safety and welfare; and

**WHEREAS,** it is the intent of the City to control the level of noise in a manner which promotes commerce; protects the sleep and repose of citizens, promotes the use, value and enjoyment of property; and preserves the quality of the environment; and

**WHEREAS,** on May 1, 2012, the City Council adopted Ordinance No. 20191-05-2012 revising Section 23-8 "Noise" ("Noise Ordinance") in its entirety to add restrictions on noise based on decibel levels, add restrictions on noise from animals and amplifiers on public property or the public right-of-way; and

**WHEREAS,** since the adoption of the Noise Ordinance concerns related to when the use of amplification on public right-of-ways and public property is permissible, especially with regard to First Amendment activities, have arisen; and

**WHEREAS,** the City recognizes that parks, sidewalks and streets are traditional public forums in which government entities are limited in their ability to regulate speech; and

**WHEREAS,** the City has an interest in assuring the orderly movement of traffic and pedestrians on streets and sidewalks and that persons of ordinary sensibility are not unreasonably discomforted living or working while allowing the expression of viewpoints and ideas; and

**WHEREAS,** it is advisable to amend the Noise Ordinance to provide that amplification may be allowed under certain conditions without regard to the content of the communication. Provided however, that noise from amplifiers may be in violation of the Noise Ordinance if the noise is disturbing to a reasonable person of ordinary sensibilities.

**NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF FORT WORTH, TEXAS:**

## SECTION 1.

Section 23-8 "Noise" to Chapter 23, "Miscellaneous," of the Code of Ordinances of Fort Worth, Texas (2015), is hereby amended to revise and re-letter subsection (d) to read as follows:

**Sec. 23-8.    Noise**

**(d)**    Noise Prohibited.

(1) In addition to the other noise restrictions in this Section, no person shall make, cause, suffer, allow or permit unreasonably loud noises in such a manner, or with such volume, intensity or duration, so as to disturb a reasonable person of ordinary sensibilities. A decibel level shall not be required for the enforcement of this subsection.

(2) This subsection is intended to apply to, but is not limited to, unreasonable noises in the form of:

a. Animals. It shall be unlawful to keep, or to permit the keeping of, any dog(s) or rooster(s) or any other bird or animal that creates any bark, cry, crow, or other sound on a frequent, repetitive or continuous basis for ten (10) minutes or longer.

b. Construction Work. Noise created by construction work within three hundred (300) feet of an occupied residential structure involving the erection, excavation, demolition, alteration, or repair of any building, structure, or flatwork before 7:00 a.m. or after 8:00 p.m. is prohibited as follows:

Before 7:00 a.m. or after 8:00 p.m.  Monday-Friday
Before 9:00 a.m. or after 8:00 p.m.  Saturday-Sunday

c. Solid Waste Collection. Noise created by solid waste haulers within three hundred (300) feet of residential zoning before 6:00 a.m. or after 11:00 p.m. is prohibited, unless a waiver is granted to the waste hauler by the Director of Code Compliance or his designee in accordance with the Grant of Privilege issued by the City to the waste hauler.

d. Musical Instruments. The playing of any radio, phonograph or other musical instrument in such manner or with such volume, particularly during the hours between 10:00 p.m. and 7:00 a.m., as to annoy or disturb the quiet, comfort or repose of persons of ordinary sensibilities in any dwelling, hotel or other type of residence.

e. Horns or other signal devices. The continued or frequent sounding of any horn or signal device on any automobile, motorcycle, bus or other vehicle except as a danger or warning signal; the creation by means of any such signal device of any

unreasonably loud or harsh device for any unnecessary and unreasonable period of time.

f. Operation of vehicles. The running of any automobile, motorcycle or vehicle so out of repair, so loaded or in such manner as to create loud or unnecessary grating, grinding, jarring or rattling noise or vibrations.

## SECTION 2.

That this ordinance shall be cumulative of all other ordinances of the City of Fort Worth, Texas, and shall not repeal any of the provisions of such ordinances, except in those instances where provisions of such ordinances are in direct conflict with the provisions of this ordinance.

## SECTION 3.

That all rights or remedies of the City of Fort Worth, Texas, are expressly saved as to any and all violations of the City Code, or any amendments thereto that have accrued at the time of the effective date of this ordinance; and as to such accrued violations, and all pending litigation, both civil and criminal, same shall not be affected by this ordinance but may be prosecuted until final disposition by the courts.

## SECTION 4.

That it is hereby declared to be the intention of the City Council that the sections, paragraphs, sentences, clauses and phrases of this ordinance are severable, and if any phrase, clause, sentence, paragraph or section of this ordinance shall be declared void, ineffective or unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such voidness, ineffectiveness or unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs or sections of this ordinance, since the same would have been enacted by the City Council without the incorporation herein of any such void, ineffective or unconstitutional phrase, clause, sentence, paragraph or section.

## SECTION 5.

That any person, firm or corporation who violates, disobeys, omits, neglects or refuses to comply with or who resists the enforcement of any of the provisions of this ordinance shall be fined not more than Five Hundred Dollars ($500.00) for each offense. Each day that a violation exists shall constitute a separate offense.

## SECTION 6.

That the City Secretary of the City of Fort Worth, Texas, is hereby directed to publish this ordinance for two (2) days in the official newspaper of the City of Fort Worth, Texas, as authorized by the V.T.C.A. Local Government Code Subsection 52.013.

## SECTION 7.

This ordinance shall take effect after adoption and publication as required by law.

APPROVED AS TO FORM AND LEGALITY:

By: *Melinda Ramos*
Melinda Ramos (Mar 24, 2021 14:40 CDT)

Melinda Ramos, Sr. Assistant City Attorney

*Mary J. Kayser*

Mary J. Kayser, City Secretary

Adopted: <u>March 23, 2021</u>

Effective: <u>March 31, 2021</u>



City of Fort Worth, Texas

# Mayor and Council Communication

DATE: 03/23/21                                    M&C FILE NUMBER: M&C 21-0198

LOG NAME: 12NOISEORDAMEND

### SUBJECT

(ALL) Adopt an Ordinance Amending Section 23.8 "Noise" of Chapter 23, "Offenses and Miscellaneous Provisions" of the Code of the City of Fort Worth to Rescind Regulations Related to Amplifiers in the Public Right-of-Way

---

### RECOMMENDATION;

It is recommended that the City Council adopt the attached ordinance amending Section 23.8 "Noise" of Chapter 23, "Offenses and Miscellaneous Provisions" of the Code of the City of Fort Worth to rescind regulations related to amplifiers in the public right-of-way.

---

### DISCUSSION:

On May 5, 2012, the City Council adopted Ordinance No. 20910, revising the noise ordinance to address common noise complaints. The 2012 amendment included a prohibition on the use bullhorns, loudspeakers or other amplification in the public rights-of-way and on City of Fort Worth property, unless it was related to public safety, an outdoor event or with permission of a city department director.

Since the adoption of the Noise Ordinance, legal concerns related to the use of amplification on public rights-of-way and public property, especially with regard to First Amendment activities on parks, sidewalks and streets, have arisen. In an effort to address these concerns, the City Attorney's Office recommends revising Section 23-8 "Noise" of the City Code to allow for the use of amplification without regard to content of the communication. This revision would allow amplification to be used in traditional public forums such as parks, sidewalks and streets where governmental entities are limited in their ability to regulate speech. Noise from amplifiers may still be found in violation of this Section if the noise is disturbing to a reasonable person of ordinary sensibilities.

A Form 1295 is not required because: This M&C does not request approval of a contract with a business entity.

---

### FISCAL INFORMATION / CERTIFICATION:

The Director of Finance certifies that this action will have no material effect on City funds.

Submitted for City Manager's Office by:    ALL ACMs         6222

Originating Business Unit Head:            Sarah Fullenwider   7623

Additional Information Contact:            Melinda Ramos      7631



Print

Fort Worth, TX Code of Ordinances

## § 23-8  NOISE.

(a) *General provisions.*

(1) *Scope.* This section applies to the control of all sound and noise within the City of Fort Worth.

(2) *Overview.* This section is designed to regulate noise by various alternative means in order to allow the enforcement of noise regulations at times when and by persons for whom noise meters are not available. A noise may be in violation of this section because it is disturbing to a reasonable person of ordinary sensibilities or because it exceeds the decibel level restrictions provided below. If a noise violates more than one of these provisions, the violation will be enforced under whichever provision is most applicable to the situation as determined by the enforcement officer of the city.

(b) *Definitions.*

**A-WEIGHTING (dBA).** The sound pressure level in decibels as measured on a sound level meter using the A-weighted network. The level so read is designated dB(A) or dBA.

**AMBIENT NOISE.** The all-encompassing noise level associated with a given environment, being a composite of sounds from all sources at the location, constituting the normal or existing level of environmental noise at a given location.

**BOUNDING REAL PROPERTY LINE.** An imaginary line at the ground and its vertical extension which separates the real property owned or occupied by one person from that owned or occupied by another person.

**DECIBEL (dBA).** The unit of measurement for sound pressure at a specified location.

**GOVERNMENTAL FUNCTION.** Work conducted by a governmental entity in the interest of the community.

**RESIDENTIAL.** Property zoned for residential use in accordance with the city's zoning ordinance.

**SOUND LEVEL.** The instantaneous sound pressure level measured in decibels obtained by the use of a sound level meter set for A-weighting on slow integration speed, unless otherwise noted.

**UNREASONABLE NOISE.**

a.  Any unreasonably loud, disturbing and unnecessary noise which causes material distress, discomfort or injury to persons of ordinary sensibilities in the immediate vicinity thereof; or

b.  Any noise of such character, intensity and continued duration, which substantially interferes with the comfortable enjoyment of private homes by persons of ordinary sensibilities.

(c) *Restrictions on decibel levels.*

(1) *Maximum sound levels.* During the times and in the zoning districts (except for activities originating in industrial zoning districts) set out below, the activities that create a sound pressure level on the complainant's bounding real property line that exceeds the maximum allowable sound level (dBA) below are declared to be public nuisances.

a.  *All residential (one-, two- and multifamily) zoning districts.*

Exhibit A-1

| Daytime | 7:00 a.m. to 10:00 p.m. = 70 dBA |
| Nighttime | 10:00 p.m. to 7:00 a.m. = 60 dBA |

b.  *All nonresidential and mixed-use zoning districts (excluding industrial zoning districts) outside "H" central business district and "TU" Trinity uptown.*

| Daytime | 7:00 a.m. to 10:00 p.m. = 80 dBA |
| Nighttime | 10:00 p.m. to 7:00 a.m. = 70 dBA |

c.  *"H" central business district, "TU" Trinity uptown and West 7th Village (per attached map).*

| Sunday through Thursday | |
|---|---|
| Daytime | 7:00 a.m. to 10:00 p.m. = 80 dBA |
| Nighttime | 10:00 p.m. to 7:00 a.m. the following day = 70 dBA |
| Friday through Saturday | |
| Daytime | 7:00 a.m. to 2:00 a.m. the following day = 80 dBA |
| Nighttime and Sunday | 2:00 a.m. to 7:00 a.m. = 70 dBA |

d.  All zoning where ambient noise level exceeds the prescribed maximum level:

| 7:00 a.m. to 10:00 p.m. = Existing ambient (dBA) + 3 dBA |
| 10:00 p.m. to 7:00 a.m. = Existing ambient (dBA) |

(2)  *Method of noise measurement.* Noise measurements shall be a minimum of 30 seconds in duration. Decibel levels are measured from the complainant's property line. For residential districts adjacent to other districts (excluding industrial zoning districts), the residential decibel levels apply when measured from a residential complainant's property line. Violations will be determined based on the highest registered reading in that measurement period. All measurement levels will be inclusive of any ambient noise that exists at the time of the measurement.

(d)  *Noise prohibited.*

(1)  In addition to the other noise restrictions in this section, no person shall make, cause, suffer, allow or permit unreasonable noise in such a manner, or with such volume, intensity or duration, so as to disturb a reasonable person of ordinary sensibilities. A decibel level shall not be required for the enforcement of this subsection (d).

(2)  This subsection (d) is intended to apply to, but is not limited to, unreasonable noises in the form of the following.

a.  1.  *Amplifiers in public ROW and on city property.* The use of a bullhorn, loudspeaker or other amplification is prohibited in the public right-of-way and on City of Fort Worth property, unless permitted as an exception below.

2. *Exceptions.*

     i.   Public safety official while performing their duties;

     ii.   Persons with an outdoor event permit as described in § 20-405 of the city code; and

     iii.   Persons with permission from pertinent city department director or designee.

     b.   *Animals.* It shall be unlawful to keep, or to permit the keeping of, any dog(s) or rooster(s) or any other bird or animal that creates any bark, cry, crow or other sound on a frequent, repetitive or continuous basis for ten minutes or longer.

     c.   *Construction work.* Noise created by construction work within 300 feet of an occupied residential structure involving the erection, excavation, demolition, alteration or repair of any building, structure or flatwork is prohibited as follows:

| Before 7:00 a.m. or after 8:00 p.m. | Monday—Friday |
|---|---|
| Before 9:00 a.m. or after 8:00 p.m. | Saturday—Sunday |

     d.   *Solid waste collection.* Noise created by solid waste haulers within 300 feet of residential zoning before 6:00 a.m. or after 11:00 p.m. is prohibited, unless a waiver is granted to the waste hauler by the director of code compliance or his or her designee in accordance with the grant of privilege issued by the city to the waste hauler.

     e.   *Music.* The playing of any music or musical instrument in such manner or with such volume or bass, particularly during the nighttime hours described in subsection (c) above restrictions on decibel levels above, as to annoy or disturb the quiet, comfort or repose of persons of ordinary sensibilities in any dwelling, hotel or other type of residence.

     f.   *Horns or other signal devices.* The continued or frequent sounding of any horn, air horn or signal device on any vehicle except as a danger or warning signal; the creation by means of any such signal device of any unreasonably loud or harsh noise for any unnecessary and unreasonable period of time.

     g.   *Operation of motor vehicles.* The revving of any engine, the playing of any music with such volume or bass, or the operation of any vehicle so out of repair, so loaded or in such manner as to create loud or unnecessary grating, grinding, jarring, rattling or squealing noise or vibrations.

   (e)   *Exemptions.* The following acts and sounds shall be exempt from the requirements of this section:

     (1)   Noise generated due to normal building conditioning and ventilation and property maintenance;

     (2)   Noise generated on public and school property, as permitted by the property owner;

     (3)   Noise generated by an outdoor event that is permitted as described in § 20-405 of the city code;

     (4)   Noise generated by amplifiers at entertainment venues having a capacity of 1,000 or more persons within "TU" Trinity Uptown;

     (5)   Noise generated by any governmental body and its contractors in the performance of a governmental function;

     (6)   Noise generated by airport, railway and vehicular transportation;

     (7)   Noise produced by gas drilling and production, which is regulated by the gas drilling ordinance in Chapter 15 of the city code; and

     (8)   Noise generated at Texas Motor Speedway.

Case 4:23-cv-00060-O   Document 1   Filed 01/17/23   Page 42 of 53   Exhibit A-1

(f)  *Enforcement.* The provisions of this section shall be enforced primarily by the police department and code compliance department.

(g)  *Penalties.*

(1)  A person commits an offense if the person makes noise in violation of this section.

(2)  An offense under this section is punishable by a fine of not more than $500.

(3)  Each occurrence of a violation, or, in the case of multiple violations, each day a violation occurs or continues, constitutes a separate offense and may be punished separately.

(4)  A violation of this section is a nuisance. The prosecution of an offense under this section does not limit the city's right to abate the nuisance, including the use of injunctive or other civil relief.

(1964 Code, § 27-18)  (Ord. 8767, § 1, passed 3-29-1983; Ord. 15608, § 1, passed 7-8-2003; Ord. 20191-05-2012, § 1, passed 5-1-2012)

Feb. 21. 2018  8:56AM                                                                   No. 6752   P. 1/1



# FORT WORTH

LAETITIA BROWN
SENIOR ASSISTANT CITY ATTORNEY

(817) 392-6639
LAETITIA.BROWN@FORTWORTHTEXAS.GOV

February 21, 2018

Nathan W. Kellum
Tony Mangini
Center for Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117

Re: Terry Fish Complaint

Dear Mr. Kellum and Mr. Mangini:

You sent a letter to Police Chief Fitzgerald and City Attorney Sarah Fullenwider on November 27, 2017, expressing your concern with the City's Noise Ordinance. Your specific concern was the City's prohibition against amplification. The City is in the process of working on an amendment to the Noise Ordinance that would remove the ban on amplification. I expect that amendment to go before the full Council sometime in late March or early April. In the meantime, the City will not be enforcing the amplification provision of the Noise Ordinance.

It is also my understanding that Mr. Fish received a citation in August 2017. Mr. Fish agreed to deferred adjudication on that citation. He has completed probation and the citation has been dismissed. Mr. Fish has no other outstanding citations.

I will contact you when the amendment gets on the Council schedule. If you have any questions or wish to discuss further do not hesitate to contact me.

Respectfully,

Laetitia Coleman Brown
Senior Assistant City Attorney
Chief, Public Safety Section

:rhm

ORDINANCE NO. 24752-03-2021

AN ORDINANCE AMENDING SECTION 23.8 "NOISE" OF CHAPTER
23, "OFFENSES AND MISCELLANEOUS PROVISIONS" OF THE CODE
OF THE CITY OF FORT WORTH (2015), TO AMEND THE
REGULATION OF AMPLIFIERS; PROVIDING THAT THIS
ORDINANCE SHALL BE CUMULATIVE OF ALL ORDINANCES;
PROVIDING A SAVINGS CLAUSE; PROVIDING A SEVERABLITY
CLAUSE; PROVIDING A PENALTY CLAUSE; PROVIDING FOR
PUBLICATION AND NAMING AN EFFECTIVE DATE.

WHEREAS, it is the policy of the City of Fort Worth to minimize the exposure of
citizens to excessive noise and to protect, promote and preserve the public health, comfort,
convenience, safety and welfare; and

WHEREAS, it is the intent of the City to control the level of noise in a manner which
promotes commerce; protects the sleep and repose of citizens, promotes the use, value and
enjoyment of property; and preserves the quality of the environment; and

WHEREAS, on May 1, 2012, the City Council adopted Ordinance No. 20191-05-2012
revising Section 23-8 "Noise" ("Noise Ordinance") in its entirety to add restrictions on noise
based on decibel levels, add restrictions on noise from animals and amplifiers on public property
or the public right-of-way; and

WHEREAS, since the adoption of the Noise Ordinance concerns related to when the use
of amplification on public right-of-ways and public property is permissible, especially with
regard to First Amendment activities, have arisen; and

WHEREAS, the City recognizes that parks, sidewalks and streets are traditional public
forums in which government entities are limited in their ability to regulate speech; and

WHEREAS, the City has an interest in assuring the orderly movement of traffic and
pedestrians on streets and sidewalks and that persons of ordinary sensibility are not unreasonably
discomforted living or working while allowing the expression of viewpoints and ideas; and

WHEREAS, it is advisable to amend the Noise Ordinance to provide that amplification
may be allowed under certain conditions without regard to the content of the communication.
Provided however, that noise from amplifiers may be in violation of the Noise Ordinance if the
noise is disturbing to a reasonable person of ordinary sensibilities.

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE
CITY OF FORT WORTH, TEXAS:

## SECTION 1.

Section 23-8 "Noise" to Chapter 23, "Miscellaneous," of the Code of Ordinances of Fort Worth, Texas (2015), is hereby amended to revise and re-letter subsection (d) to read as follows:

**Sec. 23-8.     Noise**

**(d)**     Noise Prohibited.

(1) In addition to the other noise restrictions in this Section, no person shall make, cause, suffer, allow or permit unreasonably loud noises in such a manner, or with such volume, intensity or duration, so as to disturb a reasonable person of ordinary sensibilities. A decibel level shall not be required for the enforcement of this subsection.

(2) This subsection is intended to apply to, but is not limited to, unreasonable noises in the form of:

a. Animals. It shall be unlawful to keep, or to permit the keeping of, any dog(s) or rooster(s) or any other bird or animal that creates any bark, cry, crow, or other sound on a frequent, repetitive or continuous basis for ten (10) minutes or longer.

b. Construction Work. Noise created by construction work within three hundred (300) feet of an occupied residential structure involving the erection, excavation, demolition, alteration, or repair of any building, structure, or flatwork before 7:00 a.m. or after 8:00 p.m. is prohibited as follows:

Before 7:00 a.m. or after 8:00 p.m.   Monday-Friday
Before 9:00 a.m. or after 8:00 p.m.   Saturday-Sunday

c. Solid Waste Collection. Noise created by solid waste haulers within three hundred (300) feet of residential zoning before 6:00 a.m. or after 11:00 p.m. is prohibited, unless a waiver is granted to the waste hauler by the Director of Code Compliance or his designee in accordance with the Grant of Privilege issued by the City to the waste hauler.

d. Musical Instruments. The playing of any radio, phonograph or other musical instrument in such manner or with such volume, particularly during the hours between 10:00 p.m. and 7:00 a.m., as to annoy or disturb the quiet, comfort or repose of persons of ordinary sensibilities in any dwelling, hotel or other type of residence.

e. Horns or other signal devices. The continued or frequent sounding of any horn or signal device on any automobile, motorcycle, bus or other vehicle except as a danger or warning signal; the creation by means of any such signal device of any

unreasonably loud or harsh device for any unnecessary and unreasonable period of time.

f.  Operation of vehicles. The running of any automobile, motorcycle or vehicle so out of repair, so loaded or in such manner as to create loud or unnecessary grating, grinding, jarring or rattling noise or vibrations.

## SECTION 2.

That this ordinance shall be cumulative of all other ordinances of the City of Fort Worth, Texas, and shall not repeal any of the provisions of such ordinances, except in those instances where provisions of such ordinances are in direct conflict with the provisions of this ordinance.

## SECTION 3.

That all rights or remedies of the City of Fort Worth, Texas, are expressly saved as to any and all violations of the City Code, or any amendments thereto that have accrued at the time of the effective date of this ordinance; and as to such accrued violations, and all pending litigation, both civil and criminal, same shall not be affected by this ordinance but may be prosecuted until final disposition by the courts.

## SECTION 4.

That it is hereby declared to be the intention of the City Council that the sections, paragraphs, sentences, clauses and phrases of this ordinance are severable, and if any phrase, clause, sentence, paragraph or section of this ordinance shall be declared void, ineffective or unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such voidness, ineffectiveness or unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs or sections of this ordinance, since the same would have been enacted by the City Council without the incorporation herein of any such void, ineffective or unconstitutional phrase, clause, sentence, paragraph or section.

## SECTION 5.

That any person, firm or corporation who violates, disobeys, omits, neglects or refuses to comply with or who resists the enforcement of any of the provisions of this ordinance shall be fined not more than Five Hundred Dollars ($500.00) for each offense. Each day that a violation exists shall constitute a separate offense.

## SECTION 6.

That the City Secretary of the City of Fort Worth, Texas, is hereby directed to publish this ordinance for two (2) days in the official newspaper of the City of Fort Worth, Texas, as authorized by the V.T.C.A. Local Government Code Subsection 52.013.

## SECTION 7.

This ordinance shall take effect after adoption and publication as required by law.

APPROVED AS TO FORM AND LEGALITY:

By: *Melinda Ramos*
Melinda Ramos (Mar 24, 2021 14:40 CDT)

Melinda Ramos, Sr. Assistant City Attorney

*Mary J. Kayser*

Mary J. Kayser, City Secretary

Adopted: <u>March 23, 2021</u>

Effective: <u>March 31, 2021</u>



City of Fort Worth, Texas

# Mayor and Council Communication

DATE: 03/23/21           M&C FILE NUMBER: M&C 21-0198

LOG NAME: 12NOISEORDAMEND

### SUBJECT

(ALL) Adopt an Ordinance Amending Section 23.8 "Noise" of Chapter 23, "Offenses and Miscellaneous Provisions" of the Code of the City of Fort Worth to Rescind Regulations Related to Amplifiers in the Public Right-of-Way

---

### RECOMMENDATION:

It is recommended that the City Council adopt the attached ordinance amending Section 23.8 "Noise" of Chapter 23, "Offenses and Miscellaneous Provisions" of the Code of the City of Fort Worth to rescind regulations related to amplifiers in the public right-of-way.

---

### DISCUSSION:

On May 5, 2012, the City Council adopted Ordinance No. 20910, revising the noise ordinance to address common noise complaints. The 2012 amendment included a prohibition on the use bullhorns, loudspeakers or other amplification in the public rights-of-way and on City of Fort Worth property, unless it was related to public safety, an outdoor event or with permission of a city department director.

Since the adoption of the Noise Ordinance, legal concerns related to the use of amplification on public rights-of-way and public property, especially with regard to First Amendment activities on parks, sidewalks and streets, have arisen. In an effort to address these concerns, the City Attorney's Office recommends revising Section 23-8 "Noise" of the City Code to allow for the use of amplification without regard to content of the communication. This revision would allow amplification to be used in traditional public forums such as parks, sidewalks and streets where governmental entities are limited in their ability to regulate speech. Noise from amplifiers may still be found in violation of this Section if the noise is disturbing to a reasonable person of ordinary sensibilities.

A Form 1295 is not required because: This M&C does not request approval of a contract with a business entity.

---

### FISCAL INFORMATION / CERTIFICATION:

The Director of Finance certifies that this action will have no material effect on City funds.

Submitted for City Manager's Office by:    ALL ACMs      6222

Originating Business Unit Head:      Sarah Fullenwider   7623

Additional Information Contact:      Melinda Ramos    7631

Exhibit A-3



# NORRED LAW PLLC

November 14, 2022

| | |
|---|---|
| **Neil Noakes, Chief of Police, FWPD** | **Leann Guzman, City Attorney** |
| Bob Bolen Public Safety Complex | Office of the City Attorney |
| 505 W. Felix St. | 1000 Throckmorton St. |
| Fort Worth, TX 76115 | Fort Worth, TX 76102 |
| police.chief@fortworthtexas.gov | Leann.Guzman@fortworthtexas.gov |
| **Via Email, Regular Mail, and CMRRR No.** | **Via Email, Regular Mail, and CMRRR No.** |
| **7020 1290 0000 2470 8471** | **7020 1290 0000 2470 8488** |

Re:     Unconstitutional Speech Restriction in Fort Worth

Dear Chief Noakes and Ms. Guzman:

Please know Michael Cody Torres contacted the Alliance Defending Freedom and the offices of Norred Law regarding an unconstitutional restriction on his First Amendment right to share his religious beliefs in public parks in Fort Worth.

On two occasions, June 18 and June 25, Torres went to two public parks in Fort Worth during "pride" events and shared his religious beliefs with the aid of an amplifier set to a low volume. Police directed him to particular location for him to operate his equipment and exercise his free speech.

Torres complied with the FWPD instructions regarding his location. Sharing his beliefs in this manner, Torres was eventually approached by Ft. Worth Police, who indicated that amplification was prohibited in the public park in which he and his group were operating. Officers then issued Torres citations for using an amplifier. On the second occasion, police seized Torres' equipment and arrested him.

Torres attempted to discuss the matter with FWPD officers and showed them a letter he had by former city attorney Sarah Fullenwider which acknowledged issues with the city's noise ordinance and indicated it would not be enforced until it was revised to comply with constitutional requirements.

The letter dated February 21, 2018 and attached hereto assures an attorney in a previous case that the city was working on amending the ordinance to remove the ban on amplification.

FWPD officers said the letter's advice only applied to sidewalks not public parks. Torres offered to move his group to a sidewalk, but that then he would be closer to the other group.

Torres also told the police officers that he regularly uses amplification to share his message in the Fort Worth historic stockyards district without incident or interference by police.

Ft. Worth's noise ordinance, § 23-8, particularly subsection (d)(2 prohibits amplification on all public rights-of-way and city property unless an exception applied. One of the exceptions mentioned a permit for "outdoor event[s]".

Page 2
November 14, 2022

Torres knows his message could not be heard by others at public events in Ft. Worth's parks without amplification, but threat of criminal arrest and citation prevents him from doing so, silencing his message and infringing his right to exercise free speech. As it stands, Ft. Worth is violating Torres's constitutional rights. He sends this letter seeking to resolve this conflict without unnecessary litigation.

## LEGAL ANALYSIS

### TORRES'S EXPRESSION IS CONSTITUTIONALLY PROTECTED

Torres wants to publicly proclaim his religious beliefs through constitutionally-protected activity. Religious messages are plainly within the ambit of constitutionally protected utterances. *Capital Square Review and Advisory Board v. Pinette,* 515 U.S. 753, 760 (1995). The protected character of such speech is not reduced due the disapproval of others. *Edwards v. South Carolina,* 372 U.S. 229, 236 ("public inconvenience, annoyance, or unrest" insufficient to eliminate protected status of speech). Orally broadcasting these views is a protected method for disseminating them. *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 647 (1981); *see Edwards,* 372 U.S. at 236 ("religious harangue" protected). And, because the right to free speech means a right to be heard, the constitution guarantees the right to use amplification in public. *Saia v. New York,* 334 U.S. 558, 560-61 (1948); *Reeves v. McConn,* 631 F.2d 377 (5th Cir. 1980) ("The right to communicate inherently comprehends the right to communicate effectively"). Torres's expression undeniably warrants full constitutional safeguarding.

### TORRES HAS THE RIGHT TO SPEAK IN PUBLIC PARKS

The character of the speaker's desired location determines the degree to which the government may restrict speech. *Frisby v. Schultz,* 487 U.S. 474, 479 (1988). Public sidewalks and parks are *quintessential* traditional public fora for speech. *Hill v. Colorado,* 530 U.S. 703, 715 (2000); *Pleasant Grove City v. Summum,* 555 U.S. 460, 129 S. Ct. 1125 (2009); *Morgan v. Plano Indep. Sch. Dist.,* 589 F.3d 740, 746 (5th Cir. 2009). As such, public sidewalks and parks like those where Torres seeks to speak are afforded "special protection" because of their historic role as places for public debate, and Ft. Worth's ability to restrict speech there is "very limited." *McCullen v. Coakley,* 134 S.Ct. 2518, 2529 (2014).

### TOTAL BAN ON AMPLIFICATION IS UNCONSTITUTIONAL

A direct restriction on speech, § 23-8(d)(2) can only be upheld if it 1) is content-neutral, 2) is narrowly tailored to serve a significant government interest, and 3) leaves open ample alternative channels of communication. *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.,* 460 U.S. 37, 45 (1983); *accord Knowles v. City of Waco,* 462 F.3d 430, 434 (5th Cir. 2006). Totally banning amplification in public throughout the city, § 23-8(d)(2) fails this test.

Ft. Worth ordinance § 23-8(d)(2) is not narrowly tailored to a significant interest because it "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism,* 491 U.S. 781, 798 (1989). Whatever interest Ft. Worth

Page 3
November 14, 2022

may have in regulating excessive volume, *see Ward*, 491 U.S. at 796, it has no valid interest in a total city-wide ban on amplification. *Saia*, 334 U.S. at 562 ("The police need not be given the power to deny a man the use of his radio in order to protect a neighbor against sleepless nights."); *Reeves*, 631 F.2d at 385 ("An absolute and city-wide prohibition of all sound amplification except during nine hours of the day cannot be viewed as narrowly tailored to further the State's legitimate interest.") (citation and quotation marks omitted). In *Reeves*, the Fifth Circuit held that a Houston ordinance that outright banned amplification in most public places for most hours of the day was not narrowly tailored, explaining:

> Not every amplified sound at every time except Sunday afternoon will disrupt the normal business activity of the downtown district or make the streets unsafe. Precisely because the downtown district is already a busy and noisy place, reasonably amplified free speech is guaranteed a broad right to equal participation in these aspects of modern urban life…[T]here is probably no more appropriate place for reasonably amplified free speech than the streets and sidewalks of a downtown business district.

*Id.* at 384. Ft. Worth ordinance § 23-8(d)(2) is even broader than the restriction invalidated in *Reeves*, banning amplification at any volume on all city property at all times. This plainly lacks any degree of tailoring. Like the City of Houston, Ft. Worth "may not broadly prohibit reasonably amplified speech merely because of an undifferentiated fear that disruption might sometimes result." *Id.* at 388.

In addition to lacking tailoring, § 23-8(d)(2) fails to leave open ample alternative avenues for Torres's, further condemning it. The First Amendment guarantees the right of speakers to have ample opportunity to reach their intended audience and win their attention. *Heffron*, 452 U.S. at 655; *see Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 866 (9th Cir. 2001) (ordinance that fails to allow speaker to reach audience fails to leave ample alternatives). Due to the frequent noises that typify downtown Ft. Worth, banning Torres from using an amplifier effectively silences his message, as he cannot be heard without one. That Torres may try in vain to be heard over ambient noise does not provide *ample* alternatives. *See Reeves*, 631 F.2d at 382 ("The mere existence of an alternative means of expression – in this case, unamplified speech – cannot by itself justify a restraint on some particular means that the speaker finds more effective").

## DEMAND

Ft. Worth ordinance § 23-8(d)(2) is unconstitutional on its face and persistently violates Torres's First Amendment rights, banning him from using reasonable amplification to communicate his religious convictions on public sidewalks throughout Ft. Worth. Torres eagerly desires to return to Ft. Worth to share his views as soon as possible.

Consequently, we require written assurance – <u>no later than three weeks of the date of this letter</u> – that Ft. Worth will no longer ban Torres from using reasonable amplification on public sidewalks, public parks, or other traditional public fora. The assurance will include a clear plan for correcting the unconstitutional ordinance, a dismissal of all citations issued against Torres,

Page 4
November 14, 2022

reimbursement for reasonable attorney's fees incurred to this point, and $100,000.00 to Torres for the unjust treatment he received in being cited, arrested, and having his property seized in violation of his constitutionally protected rights. If you would negotiate these terms and work out a resolution, please call me at (817) 500-9433.

     If we do not hear from you before this deadline, we must assume that Ft. Worth will continue to apply its unconstitutional restriction to Torres's speech, leaving him with no choice but to pursue legal action.

          Sincerely yours,

          Warren Norred

cc: Michael Cody Torres